**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DISTRICT OF COLUMBIA,<br><br>   Plaintiff,<br><br>  v.<br><br>JTH TAX LLC, f/k/a JTH TAX, INC d/b/a LIBERTY TAX SERVICE,<br><br>   Defendant. | Civil Action No. 22-3165 (CKK) |

**MEMORANDUM OPINION**
(January 9, 2023)

Plaintiff District of Columbia brought an action in the Superior Court of the District of Columbia ("D.C. Superior Court") against JTH Tax LLC, doing business as Liberty Tax Service ("Liberty Tax"), alleging that Liberty Tax's conduct misleads District tax-filers in violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq*. *See* Compl., ECF No. 1-1 at 1. Liberty Tax removed this action from D.C. Superior Court to federal court based on diversity jurisdiction. *See* Notice of Removal at 1.

Now pending before the Court is Plaintiff's [10] Motion to Remand to state court. Plaintiff also seeks attorney's fees and costs incurred in litigating this Motion. Pl.'s Mot. at 6. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Notice of Removal, ECF No. 1 ("Notice of Removal");
- Pl.'s Mot. to Remand, ECF No. 10 ("Pl.'s Mot.");
- Def.'s Opp'n to Pl.'s Mot. to Remand, ECF No. 16 ("Def.'s Opp'n"); and
- Pl.'s Reply in Support of Mot. to Remand, ECF No. 17 ("Pl.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

as it currently stands, the Court GRANTS Plaintiff's Motion to Remand and DENIES Plaintiff fees and costs involved in litigating this Motion.

## I. BACKGROUND

Plaintiff filed their Complaint in D.C. Superior Court on September 21, 2022. *See* Compl., ECF No. 1-1. Plaintiff asserts a claim arising under the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq*. *Id.* at 1. More specifically, Plaintiff alleges that Defendant Liberty Tax, which offers tax preparation to consumers through franchisees, employs a "Cash in a Flash" scheme that promises consumers who file returns with Liberty Tax in early filing season fifty dollars in cash. *Id.* ¶¶ 6, 13–15. Liberty Tax allegedly instructs its franchisees to raise the prices that it charges to "Cash in a Flash" recipients, *id.* ¶ 26, such that those consumers end up paying more than similarly situated consumers who did not participate in "Cash in a Flash," *id.* ¶¶ 34–42. Plaintiff contends that this deceptive practice affected a large number of D.C. residents, as Liberty Tax provided over 12,000 "Cash in a Flash" payments to D.C. consumers from 2015 to 2021. *Id.* ¶ 42. Plaintiff seeks injunctive relief, restitution and damages paid to the affected consumers, civil penalties paid to the District, and costs and attorney's fees. *Id.* at 12–13 (citing D.C. Code § 28-3909(a) and (b)).

Defendant filed a [1] Notice of Removal in this Court on October 17, 2022, indicating that there is diversity jurisdiction "[b]ecause the matter alleges a controversy in excess of $75,000.00, and the real parties in interest are citizens of different states." Notice of Removal at 1. Defendant explains that here, Plaintiff District of Columbia "is merely a nominal party asserting claims on behalf of customers of Liberty franchise locations within the District," and therefore those customers "are the real parties in interest whose

2

citizenship must be considered." *Id.* ¶ 38. Defendant argues that because those customers are citizens of the District, and Liberty is not a citizen of the District, there is complete diversity citizenship. *Id.* ¶¶ 41–44. Defendant then filed a [3] Motion to Dismiss Plaintiff's Complaint on October 24, 2022.

On October 26, 2022, Plaintiff filed a [10] Motion to Remand, arguing that there is no diversity citizenship and therefore remand is rquired because Liberty Tax failed to meet its burden of showing subject matter jurisdiction. *See* Pl.'s Mot. at 3. Plaintiff also seeks attorney's fees and costs. *Id.* at 3–4. This Motion is now ripe for the Court's consideration.

## II. LEGAL STANDARD

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Upon filing a notice of removal, the defendant "bears the burden of proving that jurisdiction exists in federal court." *Downey v. Ambassador Dev., LLC*, 568 F. Supp. 2d 28, 30 (D.D.C. 2008) (JDB). Similarly, "[w]hen a plaintiff seeks to have a case that has been removed to federal court remanded back to state court, the party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80, 84 (D.D.C. 2014) (KBJ) (quotation omitted). Courts in this jurisdiction "construe[ ] removal jurisdiction strictly, favoring remand where the propriety of removal is unclear." *Ballard v. D.C.*, 813 F. Supp. 2d 34, 38 (D.D.C. 2011).

## III. DISCUSSION

Plaintiff first argues that Defendant Liberty Tax has failed to meet its burden of establishing subject matter jurisdiction. Pl.'s Mot. at 6. Plaintiff then argues that the

Court should award attorney's fees and costs incurred as a result of the improper removal of this case. *Id.* at 9. The Court addresses these arguments in turn.

### A. Remand to D.C. Superior Court for Lack of Subject Matter Jurisdiction

Federal district courts have original jurisdiction of civil actions where the matter in controversy exceeds $75,000 and the parties are "citizens of different States." 28 U.S.C. § 1332(a). As for the first requirement—amount in controversy exceeding $75,000—the parties do not dispute that it is satisfied. *See* Def.'s Opp'n at 3. Plaintiff does not challenge the amount in controversy in its Motion to Remand nor in its Reply. *See generally* Pl.'s Mot.; Pl.'s Reply. However, the parties do dispute whether they are citizens of different states.

"[A] State is not a 'citizen' for purposes of the diversity jurisdiction," *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973), and the same is true for the District of Columbia, *see* 28 U.S.C. § 1332(e) ("The word 'States', as used in this section, includes… the District of Columbia….); *see also Long v. D.C.*, 820 F.2d 409, 414 (D.C. Cir. 1987). Therefore, the District is not typically subject to diversity jurisdiction. *Long*, 820 F.2d at 414.

Defendant Liberty Tax acknowledges that ordinarily diversity jurisdiction cannot exist when the District is a party. *See* Notice of Removal at 6; Def.'s Opp'n at 4. However, Defendant then contends that "the District is merely a nominal party asserting claims on behalf of customers of Liberty franchise locations within the District, and those customers of Liberty franchises in the District are the real parties in interest whose citizenship must be considered." Notice of Removal at 7. Defendant is correct that if the District were merely a nominal party rather than a real party in interest, diversity

4

jurisdiction could be satisfied. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980); *D.C. ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1047 (D.C. Cir. 1986); *Hood v. F. Hoffman-La Roche, Ltd.*, 639 F. Supp. 2d 25, 33 (D.D.C. 2009) (TFH). However, here, the District is a real party in interest and therefore Defendant's removal to federal court was in error.

To be a real party in interest, a state must establish two elements. First, it "must express a quasi-sovereign interest" "apart from the interests of particular private parties." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). Second, the challenged behavior must have affected a "sufficiently substantial segment of [the state's] population." *Id.* The Court finds that Plaintiff satifies both of these requirements such that it is a real party in interest, defeating diversity jurisdiction.

1. **Quasi-Sovereign Interest**

The Supreme Court has explained that a state "has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.* The District of Columbia Court of Appeals has recognized that this includes a state's "interest in the continuing prosperity of [its] econom[y]," *Pennsylvania v. Kleppe*, 533 F.2d 668, 674 (D.C. Cir. 1976), and district courts in this Circuit have found a "quasi-sovereign interest in protecting the economic well-being of their citizens who were defrauded," *Commonwealth v. U.S. Dep't of Educ.*, 340 F. Supp. 3d 7, 14, 16–17 (D.D.C. 2018) (TNM). Here, the District has a quasi-sovereign interest in the economic well-being of its residents, which it is attempting to vindicate through this action.

The Consumer Protection Procedures Act "itself makes clear that the District has a 'quasi-sovereign interest' in prosecuting consumer protection violations." *D.C. v.*

*Exxon Mobil Corp.*, Civ. Act. No. 20-1932, 2022 WL 16901988, at *9 (D.D.C. Nov. 12, 2022) (TJK).[2]  The CPPA authorizes the District to sue "in the public interest" generally, rather than on behalf of an individual or a discrete group of D.C. residents.  D.C. Code § 28-3909(a).  As other courts have found with respect to different consumer protection statutes, this grant of authority confers upon the District "a freestanding consumer-protection duty," entrusting it with "broad powers to implement the [CPPA] and protect and promote consumer welfare in the process," which "thereby advanc[es] a quasi-sovereign interest."  *West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 748 F. Supp. 2d 580, 595 (S.D. W. Va. 2010).

In addition, the CPPA authorizes the District to obtain relief distinct from that which a private citizen could seek under the statute.  First, the District can seek civil penalties paid to the District's treasury.  D.C. Code § 28-3909(b).  Plaintiff is seeking such civil penalties here.  *See* Compl. at 13.  Second, the District can seek an injunction for violations of the Act without proving damages.  D.C. Code § 28-3909(a).  Plaintiff is

---

[2] Defendant Liberty Tax points out that the order remanding the case to D.C. Superior Court was briefly stayed upon the defendants' emergency motion.  *See* Minute Order, *D.C. v. Exxon Mobil Corp.*, Civ. Act. No. 20-1932 (D.D.C. Nov. 14, 2022).  However, that stay was only granted to permit briefing on defendants' motion.  *See* Order, *D.C. v. Exxon Mobil Corp.*, Civ. Act. No. 20-1932 (D.D.C. Dec. 20, 2022), ECF No. 126, at 1.  After briefing, the court denied defendants' Motion to Stay Execution of Remand Order Pending Appeal.  *Id.*  Furthermore, in no order did the court "recognize[] the case presented a novel issue," as Defendant asserts.  Def.'s Opp'n at 16.

The Court also notes that Defendant's additional attempts to cast doubt on *Exxon*'s holding hinge on one case: *Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53 (1901).  *See* Def's Opp'n at 16–17.  However, "lower courts have not strictly construed the language in *Missouri*," instead limiting its principles.  *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1063 (W.D. Wisc. 2004).  Likewise, various Courts of Appeals have distinguished *Missouri*.  *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 392–94 (4th Cir. 2012) (discussing various Circuit opinions).

seeking injunctive relief as well.  *See* Compl. at 12.  As has been recognized, "[t]hese distinctions make clear that the District has its own 'pecuniary interest in this lawsuit' distinct from the private financial interests of individual citizens." *Exxon Mobil Corp.*, 2022 WL 16901988, at *9 (citing *Transamerica Ins. Co.*, 797 F.2d at 1047).  Altogether the statute authorizes the District to sue in the public interest and seek redress of its own injuries, constituting a quasi-sovereign interest in this litigation.

Defendant Liberty Tax argues that because the District seeks relief for individual consumers as well, it is not the real party to the action.  *See* Def.'s Opp'n at 10, 17.  Defendant states that the District "seeks to recoup a specific and defined amount of funds that a modest number of Distict residents expended on tax preparation services" and that such "limited recoupment effort is insufficient… to qualify as a 'quasi-sovereign interest.'"  *Id.* at 10.  But the District's Complaint clearly seeks additional relief, which Defendant first ignores and later downplays.  *See* Def.'s Opp'n at 10, 12–13.  While the District does pursue restitution and damages for the allegedly impacted consumers, it also seeks (as noted above) civil penalties paid to the District as well as injunctive relief that would ensure an honest marketplace, further the economic well-being of its residents, and protect residents from deceptive business practices.  *See* Compl. at 12–13.  The fact that private parties may also benefit from the District's lawsuit does not negate the District's substantial interest in this case.  This principle has been recognized nationwide.  *See Nevada v. Bank of America Corp.*, 672 F.3d 661, 671 (9th Cir. 2012) (a state's "sovereign interest in protecting its citizens and economy from deceptive [] practices is not diminished merely because it has tacked on a claim for restitution"); *Hood ex rel. Miss. v. Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006) ("The fact that private

parties may benefit monetarily from a favorable resolution of this case does not minimize nor negate [the state's] substantial interest."); *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1052–53 (C.D. Ill. 2009) (relief inuring to the state "qualifies as a 'substantial interest' sufficient to render [the state] the real party in interest regardless of its concurrent and subsidiary pursuit of relief on behalf of certain individual citizens"); *Washington v. CLA Estate Servs., Inc.*, No. C18-480 MJP, 2018 WL 2057903, at *1 & n.2 (W.D. Wash. May 3, 2018) (holding that the "position that a state cannot claim real party in interest status when it sues for broad prospective relief and also for restitution for a limited set of consumers has been rejected by the majority of courts"; collecting cases); *MyInfoGuard, LLC v. Sorrell*, Nos. 2:12–cv–074, 2:12–cv–102, 2012 WL 5469913, at *5 (D. Vt. Nov. 9, 2012) ("The fact that the State seeks civil penalties and a statewide injunction against cramming—remedies unavailable to consumers—leaves no doubt that the State has concrete interests in the litigation; put simply, the benefits of those remedies flow to the State as a whole" and "[t]he fact that the State also seeks restitution for [] consumers specifically affected by cramming practices does not undermine the State's broader interest in its case.").

Altogether the District has a demonstrated a quasi-sovereign interest at stake in this litigation. This is in line with the weight of authority from various Circuits finding that states have quasi-sovereign interests in the enforcement of consumer protection laws.[3]

---

[3] *See, e.g.*, *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 393–94 (4th Cir. 2012) (discussing that states possess a quasi-sovereign interest in pursuing enforcement of consumer protection and antitrust laws); *Kelley v. Carr*, 442 F. Supp. 346, 356–57 (W.D. Mich. 1977) ("Surely some of the most basic of a state's quasi-sovereign interests include maintenance of the integrity of markets and exchanges operating within its boundaries,

### 2. Substantial Segment of Population Affected

In addition, for the District to be a real party in the action, the alleged injuries must affect a "sufficiently substantial segment of its population." *Snapp*, 458 U.S. at 607. Defendant argues that Plaintiff only seeks relief for a "small subset" of consumers that is insufficient to constitute a substantial segment of its population. Def.'s Opp'n at 6. Defendant extrapolates from Plaintiff's Complaint that the "Cash in a Flash" scheme impacted 2,000 customers each year over a six-year period. *See* Def.'s Opp'n at 6; Compl. ¶ 42 ("Liberty Tax provided over 12,000 CIF payments to District consumers from 2015 to 2021."). According to Defendant, "[t]hat is approximately .2% of the District's population," which is "not a 'substantial segment'… so as to constitute a 'quasi-sovereign interest.'" Def.'s Opp'n at 6.

---

protection of its citizens from fraudulent and deceptive practices, [and] support for the general welfare of its residents and its economy….", *aff'd in part and rev'd in part on other grounds*, 691 F.2d 800 (6th Cir. 1980); *Hood*, 428 F. Supp. 2d at 545 (in an action brought under state antitrust and consumer protection laws, holding that "the State has a quasi-sovereign interest in the economic well-being of its citizens, which includes securing the integrity of the marketplace"); *SDS West Corp.*, 640 F. Supp. 2d at 1050 (considering lawsuit brought under state consumer protection statute, holding that "securing an honest marketplace" is "a well-established quasi-sovereign interest"; collecting cases); *State of N.Y. by Abrams v. General Motors Corp.*, 547 F. Supp. 703, 705 (S.D.N.Y. 1982) (in action concerning a company's defrauding of consumers, holding that "[t]he State's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest"); *In re Bartel*, 403 B.R. 173, 175–76 (D. Mass. 2009) (in case involving debtor who defrauded consumers, holding that "[t]he Commonwealth has an interest beyond that of each individual in ensuring that those who do business within this state comport with a basic level of fairness in all their dealings"); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. C 07–1827 SI, 2011 WL 560593, at *5 (N.D. Cal. Feb. 15, 2011) ("States have a sovereign interest in the enforcement of their consumer protection and antitrust laws… [and] in securing an honest marketplace and the economic well-being of their citizens"); *Washington v. CLA Estate Servs., Inc.*, NO. C18-480 MJP, 2018 WL 2057903, at *1 & n.2 (W.D. Wash. May 3, 2018) (noting "widespread legal support for the State's position that its suit to enforce its quasi-sovereign interest in guaranteeing an honest marketplace and the economic welfare of its citizenry bestows 'real party in interest' status upon it"; collecting cases).

However, the Supreme Court has held that there are no "definitive limits on the proportion of the population of the State that must be adversely affected by the challenged behavior." *Snapp*, 458 U.S. at 607. Defendant even admits this, quoting from a case stating that "there is no definitive threshold." Def.'s Opp'n at 6 (quoting *Ohio v. GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 749–50 (N.D. Ohio 2011)). The Supreme Court has found a state to be the real party in action where only .03% of its population was affected by the challenged behavior, *Snapp*, 458 U.S. at 599, 607, which is far less than the percentage allegedly impacted here. Numerous other courts have likewise found that "the raw number of individuals directly" affected is not determinative of whether a state has alleged injury to a substantial segment of its population, *People by Vacco v. Mid Hudson Medical Grp., P.C.*, 877 F. Supp. 143, 148 (S.D.N.Y. 1995), therefore finding small portions of the population to suffice, *see, e.g.*, *In re Suwinski*, 509 B.R. 568, 574–75 (S.D. Ohio 2013) (collecting cases, showing that this requirement has been satisfied in cases from across the country involving as few as six, twenty, fifty-one, fifty-five, and sixty-four consumers before holding that "the affected 92 consumers represent a substantial segment of the population").

In addition, courts must consider both the direct and indirect effects of an alleged injury when determining if a substantial segment of the population has been injured. *Snapp*, 458 U.S. at 607. Here, the indirect effects impact a broader portion of the state's population and the general welfare of the public. *Cf. SDS West Corp.*, 640 F. Supp. 2d at 1051 (holding that where 250 consumers were directly injured, "[a]lthough the number of persons directly harmed may be small relative to Illinois' population, the indirect benefits of barring unscrupulous companies from soliciting further business accrues to the

population at large"); *In re Trujillo*, 135 B.R. 674, 676 (D. Colo. 1992) (in lawsuit brought under Colorado Consumer Protection Act, finding indirect effects where "only six individuals are directly affected by this case" because "allowing a debtor to avoid dischargeability actions brought by the state would subvert the protections of the Colorado Consumer Protection Act and adversely impact… all Colorado consumers who may at some future date have claims under the Act."). Allowing Defendant to continue deceiving District residents would undermine the integrity of D.C. law, weaken the marketplace, and enable other residents to be harmed in the future.

Accordingly, there is a sufficiently substantial segment of D.C.'s population affected here such that the District is a real party in interest.

\*      \*      \*

Because the District is a real party in interest to this litigation, there is no diversity jurisdiction. *See Moor*, 411 U.S. at 717; *Long*, 820 F.2d at 414. Therefore, as Defendant Liberty Tax has alleged no other grounds for subject matter jurisdiction in federal court, this case must be remanded to state court.

**B. Fees and Costs**

Plaintiff next requests that Defendant pay the costs, including attorneys' fees, incurred as a result of the improper removal of this case. Pl.'s Mot. at 9. The Court finds that this argument fails.

When granting a motion to remand, a district court may, in its discretion, award attorney's fees pursuant to 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively

11

reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The threshold for objective reasonableness is rather low: Did the defendant's grounds for removal contain "at least some logical and precedential force"? *Knop v. Mackall*, 645 F.3d 381, 383–84 (D.C. Cir. 2011). However, when a defendant's removal action was contrary to well-settled law, courts regularly impose costs and expenses. *Ballard v. D.C.*, 813 F. Supp. 2d 34, 45 (D.D.C. 2011) (citation omitted). Objective reasonableness is evaluated based on the circumstances at the time the case was removed. *Id.* (citation omitted).

Plaintiff argues that Defendant's "flimsy and unsupported arguments that the District is only a nominal party ignore [] extensive precedent" and therefore they "failed to provide any objectively reasonable basis for removal." Pl.'s Mot. at 9–10. However, while the Court finds that Defendant's removal was in error, it does not find that Defendant lacked an objectively reasonable basis for its arguments.

There is extensive case law from numerous courts in other Circuits. However, the D.C. Circuit has not weighed in conclusively on this issue. When Defendant removed this case to federal court in October 2022, *see generally* Notice of Removal, no court in this Circuit had yet remanded a case to state court on the same grounds—that there is no diversity jurisdiction where the District of Columbia brought a suit under the CPPA because the District has a quasi-sovereign interest in prosecuting consumer protection violations, *see generally Exxon Mobil Corp.*, 2022 WL 16901988 (decided Nov. 12, 2022). Therefore, at the time of removal, an equivalent legal question was still pending before a district court in this Circuit and there was no precisely on-point case law from the D.C. Circuit.

Consequently, the Court finds that Defendant had an objectively reasonable basis for removal such that they should not be responsible for Plaintiff's attorney's fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand but DENIES Plaintiff's request for attorney's fees and costs incurred under 28 U.S.C. § 1447(c). Additionally, because the Court remands this action, the Court DENIES AS MOOT Defendant's [3] Motion to Dismiss. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge